## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| KEENAANEE W., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )    No. 1:25-cv-00383-JAW |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant | ) |

### REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinion evidence when determining the Plaintiff's residual functional capacity (RFC); did not adequately consider the effects of absences, time off task, and stress on her ability to work; improperly evaluated self-reported limitations; and failed to resolve an apparent conflict between the vocational expert's (VE's) testimony and the Dictionary of Occupational Titles (DOT). *See* Plaintiff's Brief (ECF No. 16). I find no error and recommend that the Court affirm the Commissioner's decision.

### I. Background

The Plaintiff applied for benefits in October 2022. *See* Record at 14. After her claims were denied at the initial and reconsideration stages, she requested a hearing before an ALJ. *See id.* That hearing took place in July 2024, after which the ALJ issued a decision finding the Plaintiff not disabled. *See id.* at 14-32, 39-57. In

1

reaching that conclusion, the ALJ found that the Plaintiff has the following severe impairments: attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD), depressive disorder, adjustment disorder, gender dysphoria, generalized anxiety disorder, and histrionic and borderline personality disorder. *Id.* at 17.

Considering those impairments, the ALJ concluded that the Plaintiff had the RFC to perform a full range of work with certain non-exertional limitations and no concentrated exposure to hazards such as moving mechanical parts or unprotected heights. *Id.* at 21. He ultimately concluded that the Plaintiff could not perform past relevant work but could perform other jobs that exist in significant numbers in the national economy. *Id. at* 30-31. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765,

769 (1st Cir. 1991).  But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III.  Discussion

The Plaintiff's first argument is that the ALJ did not properly evaluate various pieces of evidence, including evidence of her mental health impairments, when determining her RFC.  Plaintiff's Brief at 14-19.  This argument amounts to a request for the Court to reweigh the evidence, which is not permitted.  *See Mosconas v. Saul*, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020) ("This court cannot substitute its judgment for the ALJ's reasonable assessment of the evidence.").  The question is not whether there is any evidence supporting the Plaintiff's argument (there usually is).  *See id.*  Rather, it is whether "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir. 1981).  There is adequate evidence here.[1]

---

[1] At oral argument, Plaintiff's Counsel expanded on an argument made in briefing that the ALJ interpreted raw medical data from Dr. Cianciolo—a psychologist that the Plaintiff's treating provider referred her to for clarification of diagnoses.  Specifically, Plaintiff's Counsel argued that in "evaluating the opinion of Dr. Cianciolo, the ALJ erroneously interprets . . . medical data from psychological testing, despite neither of the agency reviewing psychological consultants having reviewed Dr. Cianciolo's report or data. The ALJ also ignores other consistent testing evidence indicating Ms. Wagner experiences severe depression and anxiety."  Plaintiff's Brief at 17.  Counsel did not identify the raw medical data that the ALJ supposedly interpreted in his brief or at oral argument.  That is because the ALJ did not interpret raw data.  Instead, the ALJ gave the reasons he found Dr. Cianciolo's opinion unpersuasive.  Record at 30. Critically, he does not reinterpret Dr. Cianciolo's testing results or even conclude that the diagnoses were wrong. *Id.*  He merely determined that the severity finding was inconsistent with the record as a whole and that Dr. Cianciolo examined the Plaintiff one time without a meaningful review of other medical records. *Id.*

The ALJ found that the "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but also that the claimed "intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Record at 22. This determination is supported by substantial evidence, including the Plaintiff's statements to medical and psychiatric consultants, statements on her function report, her hearing testimony, and the overall longitudinal record of treatment. *See, e.g.*, Record at 42-48, 58-78, 251-58, 319-24, 342-58, 366, 414, 418, 422, 468, 527, 667, 695-97, 853-58, 870, 877, 946-47, 1022-26, 1039-42. Additionally, while the Plaintiff raises several arguments regarding the evaluation of medical opinions, she has not shown how any alleged errors would be reasonably likely to affect the persuasiveness of those opinions, would erode the substantial evidence supporting the ALJ's decision, or would result in a more restrictive RFC.[2] *See Leslie B. v. Saul*, No. 1:19-cv-00464-GZS, 2020 WL 3960390, at *4 (D. Me. July 13, 2020) (rec. dec.), *aff'd*, 2020 WL 4457768 (D. Me. Aug. 3, 2020) ("To establish harmful error [at step four], Plaintiff must establish that she was more limited than the ALJ determined."). Picking pieces

---

[2] At oral argument, Plaintiff's counsel discussed at length the reasons that Drs. Oritt and Milan's opinions that Plaintiff would only occasionally be able to complete a normal workday were not scrivener errors as argued by the Commissioner in briefing. *See* Commissioner's Brief at 4 n.6. I am unpersuaded by this argument for two reasons. First, Dr. Milan did not conclude that the Plaintiff could only occasionally complete a normal workday. Rather, he found that "[s]he would be able to complete a normal workday and workweek with no more than occasional interruptions." Record at 75. As explained at oral argument, occasional means anything from occurring very little up to one-third of the workday. Second, I conclude that Dr. Oritt's statement that the Plaintiff "would occasionally be able to complete a normal workday and workweek without interruptions" is a scrivener's error and is inconsistent with the remainder of his evaluation and his express rejection of Susan Fogg's opinion that relied on the Plaintiff's subjective reporting. *See* Record at 62-63, 659-64. Therefore, the ALJ's partial reliance on these opinions is supported by the record.

of evidence that she wants characterized differently will not, on its own, establish reversible error. *See McGaster v. Saul*, No. 1:18-00321-N, 2019 WL 4544561, at *6 (S.D. Ala. Sept. 19, 2019) ("[S]imply citing various portions of the record, without explaining how they detract from specific findings in the ALJ's decision, effectively invites the Court to decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's, which it may not do." (cleaned up)).

Next, the Plaintiff argues that the ALJ erred when he evaluated her reported symptoms, ignored her dissociative spells, ignored her limitations and PTSD symptoms regarding public and workplace restrooms, and downplayed her Emergency Department visit related to a tongue bifurcation procedure. Plaintiff's Brief at 19-22.

When assessing an RFC, the ALJ considers "all [the Plaintiff's] symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The presiding ALJ cannot "evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled." SSR 16-3P, 2017 WL 5180304, at *5 (Oct. 25, 2017). When the objective medical evidence does not establish a disability, the ALJ can "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. Other evidence that [the ALJ] will consider includes statements from the individual, medical sources, and any other sources that might have information about the

individual's symptoms, including agency personnel, as well as the factors set forth in [the] regulations." *Id.* at 6.

Here, the ALJ determined that the objective medical evidence as a whole "does not support the alleged severity of the [Plaintiff's] impairments." Record at 23. He then evaluated the combination of medical-source opinions, the longitudinal record of treatment, the objective examination results, and the Plaintiff's statements. *Id.* at 22-30. In doing so, he explained that the Plaintiff's self-reported symptoms were inconsistent with her activities of daily living, which included cooking, cleaning, driving a car, shopping at public stores on a weekly basis, caring for a pet snake, and watching movies as a cinephile, i.e., in a manner that requires more concentration than passive entertainment. *Id.* at 22, 251-58. "While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding." *Teixeira v. Astrue*, 755 F. Supp. 2d 340, 347 (D. Mass. 2010).

After discussing how the Plaintiff's activities of daily living do not support the alleged severity of impairments, the ALJ discussed the medical evidence and how it "shows that the [Plaintiff's] conditions did not cause [her] to be as limited as alleged." Record at 23. The Plaintiff's suicidal ideation and acts decreased upon discharge from treatment, indicating some treatment compliance. *Id.* at 351-58, 364-65, 691-98, 771-80, 860-64. Her work history and involvement with a nonprofit support

community were also appropriate factors that raised doubt regarding the Plaintiff's alleged severity of impairment.  *Id.* at 22, 43, 47.

The Plaintiff also argues that the ALJ ignored her dissociative spells and limitations around public restrooms in analyzing the RFC.  Plaintiff's Brief at 19-21.  Regarding the Plaintiff's alleged dissociative spells, the ALJ concluded that, due to the spells, "the [Plaintiff] can have no concentrated exposure to hazards such as moving mechanical parts or unprotected heights."  Record at 29.  Thus, the ALJ did not ignore the spells and instead included an associated limitation in the RFC.  *Id.*

Regarding the alleged public restroom limitation, the Plaintiff's argument is unsupported by a persuasive expert medical opinion, and therefore, she has not carried her burden of establishing a limitation that may factor into the RFC.[3]  *O'Brien v. Soc. Sec. Admin. Com'r*, No. 1:11-cv-00193-NT, 2012 WL 1041323, at *2 (D. Me. Mar. 23, 2012) (rec. dec.), *aff'd*, 2012 WL 1415612 (D. Me. Apr. 24, 2012) ("the [Plaintiff] bears the burden of proof through step 4, including the burden to demonstrate the degree of functional limitation resulting from her impairments");

---

[3] The evidence that the Plaintiff cites in support of this argument includes her self-administered function report.  Record at 258.  A record from Laura Szyikowski, MS, LPC, CPSC, that reflects the Plaintiff's reported "difficulty with her place of employment about which bathroom she is allowed to use."  *Id.* at 323.  A doctor's note that reflected her statement to the provider that "[w]hile undergoing gender dysphoria treatment, the workplace made her clock out to go home and use the bathroom. Claims there is an ongoing lawsuit because of this. In general, hard to use the bathroom in public and has anxiety around this. She has not worked since June. The lack of job and associated financial strain has been major stressor and catalysts for her low mood."  *Id.* at 352 (cleaned up).  A record from a visit with Lauren Fackler, where the Plaintiff stated that her "coworkers treated her poorly when she transitioned. 'I wasn't allowed to use the restroom, had to clock out.' Using restrooms in public is stressful."  *Id.* at 667.  Another set of health records from the University of Virginia (UVA) reflects the same statements from the Plaintiff about her former employer's restrictions on bathroom use.  *Id.* at 691-93, 734, 743.  The Plaintiff's subjective statements to medical professionals are alone insufficient to support a limitation in her RFC.  *See* 20 C.F.R. § 416.929(a) (describing how subjective complaints alone are insufficient to establish work-related limitations).

*Bard v. Soc. Sec. Admin. Com'r*, 736 F. Supp. 2d 270, 277 (D. Me. 2010) (concluding that for a limitation to factor into the ALJ's RFC assessment, it must be supported by a medical expert "[u]nless the degree of limitation would be obvious to a layperson as a matter of common sense").

Finally, the Plaintiff argues that the ALJ failed to adequately resolve apparent conflicts between the VE's testimony and the DOT. Plaintiff's Brief at 22-23. She argues that because Night Cleaner/Housekeeping does not appear in the DOT and the given number is associated with Cleaner/Housekeeping, which requires assistance with patrons, there is an unresolved conflict that is inconsistent with the RFC. *Id.* at 22. She also argues that the Garment Sorter position requires ironing garments before folding, which conflicts with the RFC limitation regarding hazards. *Id.* at 23.

This argument is unpersuasive because it does not address the third occupation the ALJ identified as existing in substantial numbers, Mail Sorter. The ALJ found the Plaintiff could perform "occupations such as: Night Cleaner Housekeeping (DOT 323.687-014, SVP 2, light) with 175,000 jobs nationally; Garment Sorter (DOT 222.687-014, SVP 2, light) with 15,000 jobs nationally; and Mail Sorter (DOT 209.587-010, SVP 2, sedentary) with 30,000 jobs nationally." Record at 31-32. At the hearing, the ALJ asked the VE whether this testimony was consistent with the DOT and if there were any conflicts. *Id.* at 55. The VE stated that Video Monitor—an occupation not considered in the ALJ's decision—is performed differently in today's economy, and there were no other conflicts. *Id.*

8

Plaintiff's counsel then questioned the VE about time off-task and public interaction in the Video Monitor position. *Id.* at 56.

Although the Plaintiff claims there are conflicts for all three occupations, her brief addresses only the first two. Plaintiff's Brief at 22-23. She cites the ALJ's decision in the background section of her brief, noting that "Addresser" is a court-challenged occupation, *see id.* at 13; Record at 32, but she does not argue why that translates to the Mail Sorter position being obsolete. As a result, any challenge to that position is waived. *See Handford ex rel. I.H. v. Colvin*, 2014 WL 114173, at *11 (N.D. Ill. Jan. 10, 2014) (noting in a Social Security appeal, "perfunctory and undeveloped arguments" are deemed waived.); *Redondo-Borges v. Dept. of Housing and Urban Development*, 421 F.3d 1, 6 (1st Cir. 2005) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Thus, I decern no reversible error in the ALJ's determination that the Mail Sorter occupation exists in substantial numbers with 30,000 jobs, *see* Record at 54, and the Commissioner has satisfied his step five burden.[4] *See, e.g., Vining v. Astrue*,

---

[4] Additionally, the Plaintiff likely waived any challenge to all three occupations by failing to raise them before the ALJ. *See Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *6 (D. Me. Mar. 28, 2019) (discussing the ALJ's affirmative obligation under SSR 00-4p 2000 WL 1898704, at *4 (Dec. 4, 2000) to "(i) inquire whether there is any conflict between VE testimony and the DOT, (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified[,]" the Plaintiff "waives a claim of failure to identify and resolve a conflict between VE testimony and the DOT unless he or she can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance" (cleaned up)); *see also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (affirming ruling that the Plaintiff waived objection by failing to raise it before the ALJ, observing that "a no-waiver approach . . . at the ALJ level . . . could cause havoc, severely undermining the administrative process"). Here, the ALJ satisfied his obligation under SSR 00-4p, *see* Record at 55, and the Plaintiff has not demonstrated why the ALJ should have picked up any alleged conflicts without the assistance of counsel.

720 F. Supp. 2d 126, 136 (D. Me. 2010) (holding that 10,000 to 11,000 jobs in the nation were sufficient to establish the existence of a significant number of jobs).

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be

**AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: August 3, 2026

/s/ Karen Frink Wolf
United States Magistrate Judge

10